IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FRANCIS HALAMA,                    )    CASE NO. 1:12 CV 1859
                                   )
                Plaintiff,         )
                                   )
                                   )    MAGISTRATE JUDGE
       v.                          )    WILLIAM H. BAUGHMAN, JR.
                                   )
COMMISSIONER OF SOCIAL             )
SECURITY,                          )    **MEMORANDUM OPINION AND**
                                   )    **ORDER**
                Defendant.         )

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -3-
    A.   Background facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -3-
    B.   Decision of the ALJ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
    C.   Issues on judicial review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -6-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -8-
    A.   Standard of review – substantial evidence  . . . . . . . . . . . . . . . . . . . . . . .  -8-
    B.   Standard of review – treating physician rule and good reasons requirement.  -9-
    C.   Application of standards – the decision here is supported by substantial evidence
        and so will be affirmed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -15-
        1.   Preliminary observations  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -15-
        2.   Opinion of Dr. Poptic . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -17-
        3.   Opinion of the physical therapist  . . . . . . . . . . . . . . . . . . . . . . . .  -20-
        4.   The cane  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -20-
        5.   Mental limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -22-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -23-

## Introduction

Before me[1] is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by Francis Halama seeking judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] The Commissioner has answered[3] and filed the administrative transcript.[4] Under my initial order[5] and supplemental procedural order,[6] the parties have briefed their positions[7] and submitted supporting charts and fact sheets.[8] The parties participated in a telephonic oral argument.[9]

For the reasons stated below, the decision of the Commissioner will be affirmed.

---

[1] ECF # 12. With the consent of the parties, United States District Judge Dan Aaron Pollster transferred this matter to me for further proceedings.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 18.

[7] ECF # 21 (Halama's brief); ECF # 22 (Commissioner's brief).

[8] ECF # 17 (Halama's fact sheet); ECF # 21, Attachment 1 (Halama's charts); ECF # 22, Attachment 1 (Commissioner's charts).

[9] ECF # 24.

## Facts

**A.     Background facts**

Halama, who was born in 1952,[10] has an eleventh grade education[11] and previously worked as a machine operator/working supervisor, as well as an assistant manager of an auto parts store.[12] Halama testified at the administrative hearing that he lives with his mother and is able to drive himself and his mother to doctors' appointments or to the store.[13] He further testified that he does not regularly visit with anyone outside the home, nor keep up with past hobbies, because of arthritis in his hands and a reduced ability to focus.[14] In that regard, Halama stated that his medications produce side effects of lightheadedness, fatigue, and nightmares.[15] He also stated that he cannot work now because of constant pain, anxiety, depression, and loss of focus.[16]

As to evidence of psychological difficulties, an examining psychologist, James Sunbury, Ph.D., diagnosed Halama as having a generalized anxiety disorder and assigned

---

[10] ECF # 17 at 1 (citing transcript).

[11] *Id.*

[12] *Id.*

[13] Transcript (Tr.) at 41.

[14] *Id.* at 42.

[15] *Id.* at 43.

[16] *Id.* at 51.

him a global assessment of functioning (GAF) score of 58.[17] Dr. Sunbury concluded that Halama had mild limits in relating to others; maintaining attention, concentration, persistence and pace; and in withstanding stress and pressure.[18] A non-examining psychologist opined that Halama has a non-severe anxiety-related disorder.[19]

The medical evidence from Jennifer Poptic, M.D., Halama's treating physician, was that Halama had degenerative disc disease and needed physical therapy as well as pain management.[20] A residual functional capacity assessment completed by Dr. Poptic found that Halama was limited to: (1) carrying five pounds frequently and 15 pounds occasionally; (2) sitting 22 minutes at a time and for three hours total; (3) rarely climbing, stooping, crouching and crawling; (4) occasionally balancing and kneeling; (5) rarely pushing and pulling; and (6) occasionally reaching.[21] Dr. Poptic further stated that Halama: (1) required extra rest breaks and a sit/stand option, (2) has been prescribed a cane, and (3) experiences severe pain.[22]

An evaluation by the physical therapist concluded that Halama was limited by his back pain, depression, and anxiety to sitting for 45 minutes, standing for 22 minutes and

---

[17] *Id.* at 274-77.

[18] *Id.*

[19] *Id.* at 278, 290.

[20] *Id.* at 384-85.

[21] *Id.* at 310-11.

[22] *Id.* at 311.

walking for six minutes at one time without a break.[23] In an eight-hour day, Halama estimated to the therapist that he could sit five to six hours, stand one to two hours, and walk one to two hours.[24] Exertionally he had the capability for sedentary to light work.[25]

In addition to the evidence produced in connection with this application, there was the result from a prior application before the Administrative Law Judge ("ALJ") in this case. Specifically, Halama previously filed applications for DIB and SSI in 2005, which were denied by the Commissioner,[26] whose denial was affirmed on appeal.[27] In that earlier decision, the ALJ found Halama able to perform medium work, lifting and carrying up to 50 pounds occasionally, 25 pounds frequently, with the further ability to stand for four hours in an eight-hour workday, walk for four hours, and sit for six hours.[28]

## B.    Decision of the ALJ

The ALJ, whose decision became the final decision of the Commissioner, found that Halama had severe impairments consisting of emphysema and degenerative disc disease.[29] The ALJ made the following finding regarding Halama's residual functional capacity

---

[23] *Id.* at 312.

[24] *Id.* at 319.

[25] *Id.* at 317.

[26] *Id.* at 16.

[27] *Id.* at 89-100.

[28] *Id.* at 16.

[29] *Id.* at 20.

("RFC"), essentially adopting the prior RFC finding in Halama's previous case with some

additional environmental limitations concerning his emphysema:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for the following restrictions. The claimant can lift, carry, push and pull up to 50 pounds occasionally and 25 pounds frequently. The claimant can stand for 4 hours in an 8-hour workday, walk for 4 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant is limited to occasionally climbing ladders, ropes, and scaffolds. The claimant also is limited to frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. Finally, the claimant must avoid concentrated exposure to pulmonary irritants (fumes, odors, dusts, and gases) and extreme cold, heat, and humidity.[30]

Based on an answer to a hypothetical question posed to the vocational expert at the

hearing setting forth the RFC finding quoted above, the ALJ determined that a significant

number of jobs existed locally and nationally that Halama could perform.[31] The ALJ,

therefore, found Halama not under a disability.

**C.    Issues on judicial review**

Halama raises two issues on judicial review:

1.    Whether the ALJ's determination that Halama has the RFC for a range of medium work is supported by substantial evidence.[32]

2.    Whether the ALJ's dismissal of Halama's dysthymia and anxiety as non-severe was legal error and not supported by substantial evidence.[33]

------

[30] *Id.* at 22.

[31] *Id.*

[32] ECF # 21 at 1.

[33] *Id.*

-6-

As was developed at the oral argument, Halama's primary argument is that new and material evidence introduced in connection with his later application supports a more restrictive RFC than was established in the earlier decision. Because all parties agree that the ALJ here did acknowledge the more recent evidence and discussed it at some length,[34] this issue of the new evidence comes down to whether the ALJ gave good reasons for discounting the opinion of Dr. Poptic, Halama's treating physician.

There is also a secondary issue regarding Halama's physical impairments of whether the ALJ here should have explicitly considered Halama's use of a cane. Although Dr. Poptic's notes indicate that Halama was prescribed a cane,[35] the Commissioner contends that Halama's use of a cane was not a medical necessity and so need not be considered in fashioning the RFC.[36]

Finally, there is an additional issue raised by Halama concerning whether, at step two, the ALJ should have found mental limitations to be severe enough to include in the RFC,[37] which included no mental impairments.[38]

---

[34] *See*, Tr. at 25-26.

[35] *Id.* at 311.

[36] ECF # 22 at 12-14.

[37] ECF # 21 at 14-16.

[38] Tr. at 22.

## Analysis

**A.      Standard of review – substantial evidence**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[39]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[40] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[41]

---

[39] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[40] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[41] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.    Standard of review – treating physician rule and good reasons requirement**

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[42]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[43]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[44] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[45]

---

[42] 20 C.F.R. § 404.1527(d)(2).

[43] *Id.*

[44] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[45] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[46] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[47] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[48] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[49]

In *Wilson v. Commissioner of Social Security*,[50] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[51] The court noted that the regulation expressly contains a "good reasons" requirement.[52] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[46] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[47] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[48] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[49] *Id.* at 535.

[50] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[51] *Id.* at 544.

[52] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[53]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[54] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[55] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[56] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[57]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given

---

[53] *Id.* at 546.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[58] Second, the ALJ must identify for the record evidence supporting that finding."[59] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[60]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[61] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[62] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[63] or that objective medical evidence does not support that opinion.[64]

---

[58] *Wilson*, 378 F.3d at 546.

[59] *Id.*

[60] *Id.*

[61] *Rogers*, 486 F.3d at 242.

[62] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[63] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[64] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[65] The Commissioner's *post hoc* arguments on judicial review are immaterial.[66]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[67]

- the rejection or discounting of the weight of a treating source without assigning weight,[68]

---

[65] *Blakley*, 581 F.3d at 407.

[66] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[67] *Blakley*, 581 F.3d at 407-08.

[68] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[69]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[70]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[71] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[72]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[73] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[74] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[75]

---

[69] *Id.*

[70] *Id.* at 409.

[71] *Hensley*, 573 F.3d at 266-67.

[72] *Friend*, 375 F. App'x at 551-52.

[73] *Blakley*, 581 F.3d 399.

[74] *Id*. at 409-10.

[75] *Id*. at 410.

-14-

In *Cole v. Astrue*,[76] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[77]

**C.    Application of standards – the decision here is supported by substantial evidence and so will be affirmed.**

*1.    Preliminary observations*

Initially, I note that the ALJ here correctly observed at the outset that "prior findings and determinations" made in previous decisions are controlling in any subsequent hearing "unless there is new and material evidence or a showing of 'changed conditions.'"[78] As *Drummond v. Commissioner of Social Security* provides, it is the burden of the party seeking to escape the *res judicata* effect of the previous findings to introduce substantial evidence of the changed conditions.[79] Indeed, application of *res judicata* in the context of social security proceedings means that a prior finding by the Commissioner is presumed to remain true in a subsequent hearing, with that presumption subject to rebuttal by new material evidence of

---

[76] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[77] *Id.* at 940.

[78] Tr. at 17 (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)).

[79] *Id.* at 842.

-15-

changed conditions.[80] Significantly, as Magistrate Judge Limbert pointed out in *Senanefes v. Astrue*,[81] the issue of how a claimant establishes a change of conditions that will overcome the *res judicata* attaching to any prior RFC finding is a separate issue from the matter of what evidence is needed to support a new RFC finding.[82]

In particular, as I recently discussed in *Munford v. Commissioner of Social Security*,[83] this distinction is relevant to the situation here, where the treating source opinion is not offered as a basis for an initial determination of the RFC, but is presented as proof of a changed condition that will serve to rebut the presumption that the prior RFC finding is still valid. So understood, it is by no means clear that the standards applicable to weighing the opinions of a treating source and then articulating the reasons for weight assigned apply when the RFC has already been established. Rather, in such cases, as here, the issue before the ALJ is limited to whether the claimant has adduced substantial evidence to establish a change in conditions from the time of the original finding such as will defeat the operation of *res judicata*.

---

[80] *Graham v. Astrue*, No. CV 09-06046-SS, 2010 WL 1875669, at *8 (C.D. Cal. May 10, 2010).

[81] *Senanefes v. Astrue*, No. 4:10-CV-2157, 2012 WL 2576399 (N.D. Ohio July 3, 2012).

[82] *Id.*, at *5.

[83] *Munford v. Comm'r of Soc. Sec.*, No. 1:12-CV-2915, ECF # 27 (report and recommendation).

-16-

In that regard, the ALJ expressly found that "new and material [evidence] exists that warrants a departure from the residual functional capacity established" in the prior decision.[84] This finding does not mean, as Halama seems to suggest, that the entire previous RFC is rendered a nullity by any finding of a changed condition, no matter how small, requiring the fashioning of a wholly new RFC from only the evidence adduced at the second hearing.[85] Rather, having shown evidence of a changed condition, only that revision to the RFC occasioned by the demonstrated change – any "departure" from the prior finding – would need to be established at the second hearing. Otherwise, as is stated above, the prior RFC finding is *res judicata.*

### 2. *Opinion of Dr. Poptic*

As discussed in *Gayheart v. Commissioner of Social Security,*[86] the Sixth Circuit teaches that the rules for considering the opinion of a treating source set out in *Wilson* require two distinct analyses and that care must be taken not to collapse these separate inquiries into a single question.

An ALJ must first consider whether the opinion of the treating source should receive controlling weight. This analysis asks if the opinion is (1) well-supported by clinical and laboratory diagnostic techniques, and (2) not inconsistent with other substantial evidence in

---

[84] Tr. at 17.

[85] *See*, ECF # 21 at 11.

[86] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

the record. The next inquiry, if the opinion is not to be accorded controlling weight, requires an analysis of multiple factors to ascertain the weight to be given.

Here, while not a perfect account of the *Gayheart* analysis, the analysis of Dr. Poptic's opinion by the ALJ does address on the record each of the *Gayheart* elements so as to permit meaningful judicial review of the final decision. As will be explained, the decision here does not present the problem of a "collapsed analysis" that neglects consideration of essential elements of the evaluation, leaving it to the Commissioner to construct his own later *post hoc* rationalization for the ALJ's finding that will supply what was missing from the ALJ's own stated reasoning.

In regards to the initial step of the *Gayheart* rubric – the consideration of whether the opinion of a treating source should receive controlling weight on the basis of support from clinical findings and consistency with other substantial evidence – the ALJ first specifically noted that Dr. Poptic's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect" in support of Dr. Poptic's conclusions.[87] Further, the ALJ observed that Dr. Poptic's opinions are contradicted by other "significant evidence in the record;" namely, Halama's own "displayed abilities."[88] Thus, the ALJ has shown on the record a sufficiently detailed consideration of both elements in the first step of a *Gayheart* inquiry.

---

[87] Tr. at 25.

[88] *Id.*

-18-

As to the second level of analysis – what weight to give – the ALJ likewise cites in his opinion to several factors that bear on the assignment of weight. Specifically, the ALJ notes that "Dr. Poptic has infrequently seen the claimant" since the onset date, and that the "severe limitations" given by Dr. Poptic are "contradict[ed by] the claimant's own activities and performance," such as amounts of weight lifted in physical therapy.[89] Indeed, factors such as the length of the treating relationship and the consistency of the opinion with the record as a whole are specifically cited by *Wilson* as factors to be addressed at the second stage of determining an appropriate weight to assign the opinion of a treating source once it has been determined in the first step that it should not receive controlling weight.[90]

Therefore, the decision here closely tracks the two-stage inquiry set forth in *Gayheart*. While it would have been preferable if the analysis here proceeded in the exact sequential order as the inquiry specified in *Gayheart*, and clearly followed the precise two-step process contained there, the differences are not fatal where every element of the process is addressed and the results are present on the record in a way that permits meaningful judicial review.

The decision here to assign only little weight to the opinion of Dr. Poptic is supported by substantial evidence.

---

[89] *Id.*

[90] *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)).

### 3.    *Opinion of the physical therapist*

Related to the decision to assign little weight to the opinion of Dr. Poptic as part of the new evidence is the decision to assign limited weight to the opinion of Marie Shoa, a physical therapist, which is also new evidence at this proceeding.

As the Commissioner points out, because a physical therapist is an "other source" under the regulations, Shoa's opinion was not entitled to the same level of deference as is afforded to accepted medical sources.[91] Further, the ALJ did address Shoa's opinions but discounted them because physical therapists are not accepted medical sources; there were no treatment notes supporting the opinion; there was no evidence that Shoa had a treatment relationship of longer than nine weeks; and Shoa herself thought that Halama's reliability with regard to pain was only fair.[92]

Accordingly, the decision to accord limited weight to the opinion of the physical therapist here is supported by substantial evidence.

### 4.    *The cane*

Halama asserts that because he was prescribed a cane by Dr. Poptic, and that the physical therapist recommended using a cane for therapy, it was error for the ALJ not to incorporate the limitations associated with the use of a cane in the RFC.[93]

---

[91] ECF # 22 at 14 (citing regulations).

[92] Tr. at 25-26.

[93] ECF # 21 at 12-13.

-20-

The Commissioner counters that an ALJ must incorporate the use of a cane in the RFC finding only when the cane is a medical necessity, as that is established by the medical evidence.[94] Here, the Commissioner argues, the record contains no prescription from any medical source concerning a cane, nor does it contain physician's opinion as to the medical necessity of a cane or any evidence that Halama had significant inability to ambulate effectively or abnormal range of motion.[95]

As noted in the unpublished decision of the Third Circuit in *Howze v. Barnhart*[96] cited by the Commissioner, the mere notation by a physician that a claimant should use a cane is not evidence of medical necessity.[97] Indeed, the key finding in such cases is "'medical documentation establishing the need for a hand-held assistive device to aid in walking and standing and describing the circumstances for which it is needed.'"[98] In that regard, the Seventh Circuit recently stated that proof of the medical necessity of a cane "require[s] an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary."[99]

---

[94] ECF # 22 at 12 (citing SSR 96-9p, 1996 WL 374185).

[95] *Id.* at 13.

[96] *Howze v. Barnhart*, 53 F. App'x 218 (3rd Cir. 2002).

[97] *Id.* at 222.

[98] *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (quoting *Martinez v. Astrue*, 316 F. App'x 819, 826 (10th Cir. 2009).

[99] *Id.* at 955 (citations omitted).

Here, even Halama does not contend that the record contains the "unambiguous" statement of a physician containing the circumstances under which it would be medically necessary for him to use a cane. Inasmuch as there is no such statement in the record, I find that the decision of the ALJ in this case not to incorporate the use of a cane into the RFC is supported by substantial evidence.

### 5.  *Mental limitations*

Halama argues that the ALJ should have found certain mental limitations to be severe at step two and incorporated them into the RFC.[100] Halama concedes that both the consulting and reviewing psychologists found that the mental limitations were only mild, but contends that the opinion of the physical therapist that Halama should get a further psychological workup, and Dr. Poptic's prescriptions for various medications to address depression and anxiety "conflict" with the previous reports of the psychologists, warranting a remand to "resolve the conflict"described there.[101]

As the Commissioner states, the prescription of drugs of itself is not proof that an impairment is severe.[102] Further, the ALJ noted that the prior decision found only a mild limitation in the four functional areas known as paragraph B criteria, and that an examination by the ALJ of all four areas yielded the same result.[103] Finally, the opinions of the consulting

---

[100] ECF # 21 at 14-16.

[101] *Id.* at 16.

[102] ECF # 22 at 18 (citing cases).

[103] Tr. at 21.

examining psychologist, Dr. Sunbury,[104] and the state agency reviewing psychologists, Drs. Casterline and Johnson,[105] all agreed that Halama had only mild mental impairments.

As such, the decision that Halama has only mild mental limitations is supported by substantial evidence.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Halama is not disabled. Accordingly, the decision of the Commissioner denying Halama disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: September 5, 2013                               s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge

---

[104] *Id.* at 274-77.

[105] *Id.* at 278, 283, 288, 290, 292.

-23-